UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLLEEN HARGRAVE-THOMAS,

                                 Petitioner,        CIVIL CASE NO. 00-40171

v.

                                             HONORABLE PAUL V. GADOLA
                                           U.S. DISTRICT JUDGE

JOAN YUKINS,

                                 Respondent.
_____/

## ORDER

      Kylleen Hargrave-Thomas is a Petitioner who is well-known to this Court. Among all others who have come before this Court, Ms. Hargrave-Thomas and her petition for a writ of habeas corpus stand out both factually and procedurally. Petitioner is currently on bond following a successful, but later reversed, petition for a writ of habeas corpus. Now before the Court are Respondent's third motion to enforce the Sixth Circuit's mandate, for revocation of bond, for order to surrender, and for order of arrest, filed on May 9, 2005; and Petitioner's motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b), for an evidentiary hearing, and to continue bond, filed on July 21, 2005. These motions are merely the latest, and perhaps last, motions in a struggle for both sides to achieve what, in their respective views, is justice. For the reasons set forth below, the Court will reluctantly dismiss Petitioner's petition for a writ of habeas corpus, dismiss her motion for relief from judgment, revoke Petitioner's bond, order Petitioner to surrender, and deny her motion for an evidentiary hearing.

## I.   Procedural History

This case arises out of the tragic death of Manuel Joseph Bernal.  Mr. Bernal was killed in the early morning hours of October 11, 1991.  As he lay sleeping, a knife was plunged into his heart and his bed was lit aflame.  Ms. Hargrave-Thomas, who, depending on the differing accounts was either Mr. Bernal's fianceé or his recently scorned lover, was eventually charged with his murder.[1]

### A.  Petitioner's Trial

Subsequent to being charged with Mr. Bernal's murder, Petitioner was tried in the Recorder's Court for the City of Detroit.   After being persuaded to do so by a friend of Ms. Hargrave-Thomas, Petitioner's trial counsel, lead attorney Rene Cooper and co-counsel Nicholas Venditelli, took up Ms. Hargrave-Thomas's case without charge.  Unfortunately, Ms. Hargrave-Thomas appears to have gotten what she paid for in this instance.  With the benefit of hindsight, if Petitioner sought out her counsel solely because of an inability to pay, in the candid opinion of this Court, Ms. Hargrave-Thomas would have been far better off seeking appointed counsel.  In perhaps the most effrontuous example of representation this Court has seen, Mr. Cooper and Mr. Venditelli failed to interview any witnesses and failed to conduct an investigation.  They recommended that Ms. Hargrave-Thomas waive her right to a trial by a jury of her peers.  Subsequently, counsel failed to make an opening argument, failed to present a theory of the case, and did not put forth any

---

[1]Because of the procedural nature of the motions now before the Court, a complete discussion of the facts surrounding the actual murder have been omitted.  A thorough discussion of the facts can be found in this Court's original order granting Petitioner's writ of habeas corpus. *Hargrave-Thomas v. Yukins*, 236 F. Supp. 2d 750, 754-59 (E.D. Mich. 2002), *rev'd* 374 F.3d 383 (6th Cir. 2004).

evidence. Instead, their entire efforts to defend Ms. Hargrave-Thomas consisted only of a suggestion in closing arguments that the prosecution's case was nothing but innuendo and speculation.[2]

On November 5, 1993, following the close of trial, the Honorable Wendy Baxter of the Recorder's Court for the City of Detroit found Ms. Hargrave-Thomas, a woman with no previous encounters with police, guilty of first degree murder, M.C.L. 750.316, and burning of a dwelling house, M.C.L. 750.72. Petitioner was sentenced to life in prison without the possibility of parole for the murder conviction and 36 months to 20 years for the arson conviction.

B. Petitioner's Appeals

Soon after trial, through newly retained appellate counsel, Ms. Hargrave-Thomas moved the trial court for a new trial on several grounds, the most relevant to the matters now before this Court being a claim of ineffective assistance of counsel. Surprisingly, despite the spiritless approach to the defense of the murder and arson charges against Ms. Hargrave-Thomas by her trial counsel, her new appellate counsel did not argue ineffective assistance of trial counsel for failure to investigate.

-----

[2]When called to testify at the habeas corpus proceeding before this Court, Mr. Cooper suggested that his failure to interview any potential witnesses or conduct an investigation before trial was because he was "cocky" about the prosecution's entirely circumstantial evidence in the case. *Hargrave-Thomas*, 236 F. Supp. 2d at 769. Mr. Cooper's cockiness apparently also led him to fail to call many important potential defense witnesses at the trial, even though there were an abundance of such persons who could have offered valuable and perhaps compelling evidence on Petitioner's behalf, such as Wesley Sibu, the newspaper delivery person for Mr. Bernal's home; Petitioner's two sons; the school guidance counselor that Petitioner met with on the morning of the murder; and Petitioner's dentist office employer, co-workers, and patients she attended to on that morning. This Court has previously expressed its views on Attorney Cooper's statement regarding his cockiness, both in its original order and several times throughout the in-court proceedings. *See id.* at 769-71, 779; Oral Arg. on Mot. to Enforce Mandate and Revoke Bond Tr., p. 30-31 (June 22, 2005); Oral Arg. on Supp. Briefing Tr., p. 30 (July 13, 2006).

3

Instead appellate counsel claimed that her trial attorneys were ineffective for failing to move to suppress particular evidence presented at trial and for failing to object to alleged questionable comments made by the prosecutor relating to Ms. Hargrave-Thomas's assertion of constitutional protections.  Appellate counsel also asked the court to conduct a *Ginther* hearing to further develop the record as it pertained to her ineffective assistance of counsel claims.  *See People v. Ginther*, 212 N.W. 2d 922 (1973).  The trial court denied Petitioner's request for a new trial and her request for the *Ginther* hearing.

Petitioner raised nearly identical arguments with the Michigan Court of Appeals and then with the Michigan Supreme Court, again failing each time to raise a claim of ineffective assistance of counsel for failure to investigate.  The Michigan Court of Appeals, in an unpublished opinion, rejected Petitioner's arguments based upon the record as it then existed.   The Michigan Supreme Court, in a one line order, denied Petitioner's application for leave to appeal.  *People v. Hargrave-Thomas*, 560 N.W.2d 626 (Mich. 1996) (table decision).  At no time did appellate counsel ever raise an ineffective assistance of counsel for failure to investigate claim.

C.  Petitioner's State Motion for Relief from Judgment

Petitioner's current counsel then took over her case, seeking relief again through the state court system, by way of a motion for relief from judgment, pursuant to Michigan Court Rules 6.501, *et. seq.*  In this motion, Petitioner raised, for the first time, a claim that this Court believes was obvious and long overdue.  Counsel made a claim of ineffective assistance of trial counsel for failure to investigate.  Because Petitioner had not raised the claim against trial counsel on direct appeal, Petitioner had procedurally defaulted the claim.  Due to the procedural default, Petitioner was

4

required to show "good cause" and "actual prejudice" to overcome this default.  M.C.R. 6.508(D).

Petitioner claimed the "good cause" for the failure to raise the claim on direct appeal was because

the matter was outside the record.   At no time did Petitioner's counsel raise any claim of ineffective

assistance of appellate counsel for failing to raise such an obvious claim.[3]

On November 11, 1998, the trial court denied Ms. Hargrave-Thomas's motion because it

found she had failed to demonstrate the good cause or actual prejudice necessary to overcome the

procedural default.  Similarly, the Michigan Court of Appeals, in an unpublished July 21, 1999

order, denied leave to appeal because Petitioner had failed to demonstrate that she met the good

cause and actual prejudice requirements of Michigan Court Rule 6.508(D).  The Michigan Supreme

Court denied leave to appeal on the same grounds on April 28, 2000.  *People v. Hargrave-Thomas*,

611 N.W.2d 799 (Mich. 2000) (table decision).

D.  Petitioner's Federal Habeas Corpus Petition

Ms. Hargrave-Thomas's next action brought her into the purview of this Court when she

---

[3]This Court is mindful of the admonition of the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), when it warned:

> [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

*Strickland v. Washington*, 466 U.S. 668, 689 (1984) (citations omitted).  However, even with that in mind, this Court believes trial counsel's failure to interview any witnesses nor present any evidence in a bench trial for murder and arson, suggests to even the most deferential viewer, that a claim for failure to investigate was obvious.

5

filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on November 17, 2000.

In that petition, Ms. Hargrave-Thomas made four major claims: (1) prosecution failed to disclose

material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1967), (2) Petitioner

was denied due process because of the ineffective assistance of her trial counsel, (3) the evidence

adduced at trial was insufficient to support her conviction of murder and, (4) misconduct by the

prosecutor deprived her of her right to a fair trial.  *Hargrave-Thomas*, 236 F. Supp. 2d at 759.  This

Court granted Petitioner leave to take discovery on May 22, 2001, and after four extensions of the

discovery deadline, discovery closed on April 19, 2002.

Following the close of discovery, this Court held three days of evidentiary hearings to

determine the merits of Petitioner's claims.  At those hearings, the Court heard from six witnesses;

among the witnesses were Rene Cooper and Nicholas Vendittelli, Petitioner's co-counsel at the trial

level; Elizabeth Jacobs, Petitioner's counsel on direct appeal; and Ms. Hargrave-Thomas.[4]

Following careful consideration of all the evidence, the Court issued its opinion and order on August

21, 2002.

In the opinion and order of this Court, three of Petitioner's four major claims were denied.

More specifically, the Court ruled that Petitioner's *Brady* claim failed because she did not "show

prejudice sufficient to overcome the adequate-and-independent-state-ground doctrine" and that

additionally, the claim failed on the merits; that given the deferential standard when considering a

claim of insufficient evidence, "the decision of the [Michigan] Court of Appeals was neither

_____

[4]The Court also heard from two witnesses not relevant to the current proceedings: Michael
Reynolds, the Assistant Prosecuting Attorney for Wayne County who originally prosecuted
Petitioner; and Scott Denton, a certified anatomic, clinical, and forensic pathologist.

contrary to, nor an unreasonable application of, federal law"; and that Petitioner failed to show how alleged misconduct by the prosecutor would have prejudiced her bench trial.[5]   *Hargrave-Thomas*, 236 F. Supp. 2d at 767, 778.

Ruling on Petitioner's claim of ineffective assistance of trial counsel, however, this Court found that Petitioner was entitled to relief.   The Court concluded that, based on the testimony of Attorneys Cooper and Venditelli, Petitioner had demonstrated that counsel's performance was deficient for failure to investigate, easily meeting the first prong of the *Strickland* test, deficient performance.   *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   This Court concluded:

> At a bare minimum, a lawyer must "interview potential witnesses and . . . make an independent investigation of the facts and circumstances in the case."   *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (internal quotation omitted).   Neither of Petitioner's trial counsel did so; instead defense counsel were supine.   They chose not to investigate or call any witnesses, and decided to present no defense theory. Counsel made these decisions not because of any strategic or tactical assessment of the case.   Instead, Attorney Cooper chose this path simply because he was "cocky" about his chances for success and he thought the prosecution's case was "terribly weak."   Attorney Venditelli made this decision because he was somehow unsure as to whether Petitioner was his client.   Accordingly, the defense attorneys' performance fell far outside of the wide range of professionally competent assistance.

*Hargrave-Thomas*, 236 F. Supp. 2d at 769 (footnote and citations omitted).   Continuing the *Strickland* analysis, this Court also found Petitioner had met prong two of the test, the prejudice requirement: "It is likely that, given the circumstantial and underwhelming nature of the prosecution's case, the exculpatory circumstantial evidence that a competent investigation of

---

[5]A detailed discussion of this Court's findings on each of Petitioner's claims as relevant to the original habeas proceeding is set forth in the Court's July 21, 2002 opinion and order.   *See Hargrave-Thomas*, 236 F. Supp. 2d at 759-74.

potential witnesses would have uncovered would have led a fact finder to acquit Petitioner." *Id.* at 774.

This Court, in addition to the *Strickland* analysis, also believed Petitioner had been caught in a "Catch-22." *Id.* at 761-62. The "Catch-22" this Court perceived to exist stemmed from Petitioner's repeated, but denied, requests for a *Ginther* hearing. A *Ginther* hearing would have allowed Petitioner to develop the factual record necessary to pursue a claim of ineffective assistance of trial counsel for failure to investigate. This inability to develop the record effectively precluded Petitioner from bringing forth the claim on direct appeal, thus initiating the procedural default. Returning full circle, the failure to receive a *Ginther* hearing then prevented her from establishing good cause and prejudice necessary to overcome the procedural default. As a result of this "Catch-22" this Court found Petitioner, for purposes of her petition for writ of habeas corpus, had established cause, sufficient to overcome the procedural default. Combined with the prejudice resulting from her trial counsel's failure to conduct any meaningful defense of her case, this Court ordered that Petitioner either be granted a new trial or released from custody. *Id.* at 774. Respondent filed a timely notice of appeal.

As a result of the Court's decision on the habeas petition, Petitioner's motion for release on bond was granted on September 13, 2002. In granting Petitioner's bond, this Court found that Respondent had failed to show a likelihood of success on the merits of the appeal and that the second and fourth factors under *Hilton v. Braunskill*, 481 U.S. 770, 776, did not militate against release. Consequently, Petitioner was released on bond from the Scott Correctional Facility in Plymouth, Michigan, and has remained free on bond until now.

On July 6, 2004, the Court of Appeals for the Sixth Circuit, in a two-to-one decision,[6] reversed this Court and remanded the case with instructions to dismiss the habeas petition. *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 391 (6th Cir. 2004). In reversing, the Sixth Circuit disagreed with this Court's finding of "cause" sufficient to overcome the procedural default on Petitioner's claim of ineffective assistance of trial counsel for failure to investigate. In so disagreeing, the Sixth Circuit found fault with this Court's determination that Petitioner had been caught in a "Catch-22." The Court of Appeals seized on the fact that Petitioner's direct appeal claim of ineffective assistance of trial counsel was based not on failure to investigate but on claims of failure to object to evidence and to alleged improper comments made by the prosecutor. The Sixth Circuit found:

> *Ginther* authorizes the creation of a record to support claims which the defendant "wishes to urge on appeal"– not claims which the defendant has expressed no wish to urge on appeal. Neither *Ginther* nor, to our knowledge, any other Michigan authority permits the use of an evidentiary hearing to illuminate claims which have not been asserted or to unearth claims of which the defendant may be unaware.

*Id.* at 388. Therefore, "it was Ms. Hargrave-Thomas' failure to raise the [failure to investigate] claim, and not any misguided action of the state courts, that caused the procedural default." *Id.* at 389. Because the Court of Appeals concluded that the "cause" requirement had not been met, a consideration of "prejudice" was not necessary. Continuing on, the Sixth Circuit also found that "the 'miscarriage of justice' exception does not excuse Hargrave-Thomas' procedural default." *Id.* at 391. In so finding, the Court of Appeals found that it was "unable to conclude that Ms. Hargrave-

---

[6]Judge Clay, in dissent, stated that "Petitioner has shown 'cause and prejudice' to overcome the default of her claim of her counsel's failure-to-investigate, thus warranting the district court's grant of habeas relief." *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 394 (6th Cir. 2004).

9

Thomas has shown it probable that she is actually innocent," *id*. at 388, the showing necessary to meet the "miscarriage of justice" standard.

The mandate that normally follows a circuit court decision did not readily issue on this case because Petitioner successfully moved the Court of Appeals to stay the mandate pending her petition for rehearing *en banc. See* Fed. R. App. P. 41.  Respondent, nevertheless, filed its first "Emergency Motion for Revocation of Bond, Order to Surrender, and Order for Arrest," on July 12, 2004.  This Court, while recognizing that it did not yet have the jurisdiction to dismiss the habeas petition, *see* 6 Cir. I.O.P. 41(a), but did have the jurisdiction to consider Respondent's motion, *see* Fed. R. App. P. 23; *Workman v. Tate*, 958 F.2d 164, 167 (6th Cir. 1992), considered the stay issued by the Sixth Circuit, and found that the relevant *Hilton* factors remained unchanged since the original bond determination.  This Court denied Respondent's motion on July 28, 2004.

Following the Sixth Circuit's denial of Petitioner's request for rehearing *en banc* on September 9, 2004, Respondent filed its second "Emergency Motion for Revocation of Bond, Order to Surrender, and Order for Arrest," on September 15, 2004.  Before this Court could hold a hearing on Respondent's motion, however, the Sixth Circuit again stayed the issuance of its mandate to allow Ms. Hargrave-Thomas to file a petition for a writ of certiorari.  This Court, placed in the same position as that following Respondent's first motion for revocation of bond, again denied Respondent's motion to revoke bond on October 21, 2004, finding the relevant *Hilton* factors had not changed since the last determination.

Petitioner then filed a petition for a writ of certiorari to the United States Supreme Court on December 3, 2004.  The case was placed on the docket on January 7, 2005 and the Supreme Court

denied Petitioner's request for a writ of certiorari on April 18, 2005. *Hargrave-Thomas v. Yukins*, 544 U.S. 979 (2005). Following the Supreme Court's denial of certiorari, the Sixth Circuit issued the mandate on April 25, 2005, pursuant to the July 6, 2004 disposition.[7]

Seeking a revocation of Petitioner's bond based on the issuance of the Sixth Circuit's mandate and an apparent termination of all of Petitioner's avenues for relief, Respondent filed a third "Motion for Revocation of Bond, Order to Surrender, and Order for Arrest," on May 9, 2005. After complete briefing, this Court held a motion hearing on June 22, 2005 in this matter. At this hearing, Petitioner, for the first time, indicated to this Court that she was now seeking relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). Petitioner subsequently filed a "60(b) Petition for Relief from Judgment and to Continue Bond" on July 21, 2005. The Court, seeking full consideration of Petitioner's request for relief, held two motion hearings and ordered supplemental briefing on the issue.[8] This motion remains before the Court, along with Respondent's third

---

[7]While her application for writ of certiorari was pending, Petitioner filed a second petition for habeas corpus relief in the Eastern District of Michigan on April 21, 2005. Initially assigned to Judge Paul D. Borman, the case was administratively reassigned as a companion case to this Court on April 28, 2005. This Court, without jurisdiction to consider a "second or successive" habeas petition under the Antiterrorism and Effective Death Penalty Act of 1996, codified at 28 U.S.C. § 2241 *et seq.*, transferred the case to the Sixth Circuit. *Hargrave-Thomas v. Yukins*, No. 05-40135 (E.D. Mich. May 19, 2005) Order Transferring Case to the United States Court of Appeals for the Sixth Circuit Pursuant to 28 U.S.C. § 2244(b)(3). The Sixth Circuit subsequently denied Petitioner permission to file a second petition on November 3, 2005. *Hargrave-Thomas v. Yukins*, No. 05-1599 (6th Cir. Nov. 3, 2005).

[8]This Court has clearly expressed its rationale on the record for the extended delay between the April 25, 2005 issuance of the Sixth Circuit's mandate and this order. The delay was a function of the highly unusual nature of the case; the Court felt it was absolutely necessary to give all arguments before the Court an absolutely thorough consideration.

 Petitioner's case here . . . is a rare example . . . of the failure of the Anti-terrorism and Effective Death Penalty Act, the so called AEDPA restriction on filing a second

11

"Motion for Revocation of Bond, Order to Surrender, and Order for Arrest."

With the extended procedural history now set forth, the Court will next turn to Petitioner's request for relief pursuant to Federal Rule of Civil Procedure 60(b). A consideration of Respondent's motion to revoke bond and order to surrender necessarily follows.

## II.     Petitioner's Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)

Petitioner, through her July 21, 2005 motion, seeks relief from this Court pursuant to Federal Rule of Civil Procedure 60(b). In her motion for relief via Rule 60(b), Petitioner asks this Court to find that procedural errors so plagued the first habeas petition that it resulted in a manifest injustice. Therefore, Petitioner argues, her original habeas petition should be reinstated according to *In re Abdur'Rahman,* 392 F.3d 174 (6th Cir. 2004) (*en banc*).[9] Additionally, Petitioner requests that based on the reinstating of her first habeas petition, this Court conduct another evidentiary hearing

_____

> or successive habeas petitions and while [the Court] is the first to recognize that the AEDPA restriction on successive petitions for habeas corpus is laudable . . . there are situations in which that Act may prevent an innocent woman from obtaining justice or even having the opportunity to seek to obtain justice which is a sad, sad situation. And that really motivates me to be open to trying to explore this matter just as thoroughly as possible . . . but, you know, this is the [ . . .] most extreme penalty that can be installed or instituted against a defendant in the State of Michigan. We don't have any death penalties and this is the worst the courts can do as far as punishment. I think that that warrants therefore, [a] very, very exhaustive look at this sort of situation.

Oral Arg. on Respondent's Mot. to Enforce Mandate, Mot. to Revoke Bond, Mot. to Order Surrender, and Mot. to Order Arrest Tr., p. 48 (Feb. 17, 2006).

[9]The Court notes that the United States Supreme Court vacated *In re Abdur'Rahman,* 392 F.3d 174 (6th Cir. 2004) (*en banc*), and remanded the case to the Court of Appeals for the Sixth Circuit for consideration in light of *Gonzalez v. Crosby,* 545 U.S. __, 125 S.Ct. 2641 (2005). *Bell v. Abdur'Rahman*, __ U.S. __, 125 S. Ct. 2991 (2005). *In re Abdur'Rahman* remains pending before the Sixth Circuit on remand.

at which time Petitioner will offer testimony of at least seven witnesses who would call her guilt into doubt.[10]  Last, she requests that she be allowed to remain on bond during the pendency of these requested proceedings.

In her motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b), Petitioner raises two strains of arguments.  Petitioner first argues that Rule 60(b)(1) allows her relief in the instant case because of "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Petitioner now claims her federal habeas counsel made an excusable mistake in failing to raise a claim of ineffective assistance of *appellate* counsel in the original petition; the mistake is excusable she argues, because the existing case law, as well as the Michigan courts' refusal to grant her a *Ginther* hearing, made it impossible, even with due diligence, to discover a basis for alleging that appellate counsel was ineffective for failure to investigate outside of the then-existing record.  Petitioner argues that the Sixth Circuit's order reversing this Court's grant of habeas was a "surprise" ruling.  It was a surprise ruling she contends, because it, for the first time, clearly placed an affirmative duty on Petitioner's appellate counsel to investigate outside the record.  Petitioner argues that before this decision, she had no way of knowing that her appellate counsel had such a duty.  Therefore, her argument follows, such a failure to raise the claim in the original habeas is excusable because of the surprise ruling.

Petitioner's second strain of arguments are set forth under the broad language of Rule 60(b)(6): relief may be granted for "any other reason justifying relief from the operation of the

---

[10]At no time does Petitioner explain why these witnesses, now allegedly able to call her guilt into question, were not presented at the evidentiary hearing held during the original proceeding on the petition for a writ of habeas corpus.

judgment." Fed. R. Civ. P. 60(b)(6). These arguments arise out of what Petitioner believes are the unusual and extraordinary circumstances of her case. In particular, Ms. Hargrave-Thomas claims three serious procedural errors call into question the Court's judgment on her first habeas petition and now justify relief. First, Petitioner claims that this Court failed to rule on her procedurally defaulted claim of failure to investigate by trial counsel, under the fundamental miscarriage exception to the procedural default rule. Second, she claims that the Court erred procedurally when it failed to address the bad faith element of Petitioner's *Brady* claim. Third, she claims the Michigan state courts' refusal to clarify the duties of her appellate counsel affected the integrity of this Court's habeas proceeding.

Before this Court may undertake any consideration of the merits of Petitioner's Rule 60(b) claims, it must first determine if the motion is now properly before the Court. An inquiry into whether or not this Court may consider Petitioner's Rule 60(b) motion necessarily starts with the language of the rule itself. Federal Rules of Civil Procedure 60(b) states:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative **from a final judgment, order, or proceeding** for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

Fed. R. Civ. P. 60(b) (emphasis added).

The plain language of the rule states that the Court may relieve a party from a "final judgment, order or proceeding." Therefore, the relevant question becomes, from which judgment

14

is Petitioner seeking relief?  Three possibilities readily present themselves.  First, Petitioner is seeking relief from the Sixth Circuit's ruling that reversed this Court's decision and ordered that her petition for a writ of habeas corpus be dismissed.  *See Hargrave-Thomas*, 374 F.3d at 391.  Second, she is seeking relief from this Court's, August 21, 2002 order that granted either her release or a new trial.  Third, she is seeking relief from the order dictated by the Court of Appeals for the Sixth Circuit in its July 6, 2004 opinion, this Court's, until now, non-existent order dismissing Ms. Hargrave-Thomas's petition for a writ of habeas corpus.  *See id.*

Taking the potential challenges in turn, this Court summarily disposes of the first possibility. This Court, as an inferior court, is plainly subject to the review of the Court of Appeals for the Sixth Circuit.  *See* 28 U.S.C. § 1291.  As such, by its very nature, this Court has no authority to reconsider the judgment of an appellate court.  Restated, the very essence of the relationship between this Court and the Court of Appeals for the Sixth Circuit precludes this Court from altering any decision made by the Court of Appeals.  No relief may be granted to Petitioner to the extent that she is asking this Court to directly grant relief from the appellate decision.

The Court must also examine the possibility that Petitioner is seeking relief from this court's August 21, 2002 judgment that granted Petitioner's release or a new trial.  To the extent clarified in her Supplemental Response to the Oral Argument on Supplemental Briefing of the 60(b) Motion," filed July 17, 2006, Petitioner now asserts this as her claim.  As an initial matter, however, while not holding such an attack as improper per se, this Court is struck by the odd nature of an attack on the procedural integrity of a proceeding that resulted in this Court's judgment *in Petitioner's favor*.  Nevertheless, more detrimental to Petitioner's assertion that she is attacking this

15

Court's grant of habeas relief is that this Court's judgment was reversed by the Court of Appeals. *Hargrave-Thomas*, 374 F.3d at 391. The original August 21, 2002 judgment of this Court no longer exists. *See Wheeler v. John Deere Co.*, 935 F.2d 1090, 1096 (10th Cir. 1991) (noting "To 'reverse' a judgment means to 'overthrow, vacate, set aside, make void, annul, repeal, or revoke it.' Black's Law Dictionary 1319 (6th ed. 1990). A judgment reversed by a higher court is 'without any validity, force or effect, and ought never to have existed.' *Butler v. Eaton,* 141 U.S. 240, 244 (1891)"); *see also Pedigo v. P.A.M. Transport, Inc*., 98 F.3d 396, 398 (8th Cir. 1998) (Reversal of a judgment nullifies that judgment and any order based upon it.). Consequently, this Court cannot grant relief from its judgment because it no longer exists by reason of the Sixth Circuit's reversal.

Finally, this Court must consider whether Petitioner can seek Rule 60(b) relief from the, until now, non-existent order of this Court in compliance with the Court of Appeals July 6, 2004 opinion. *See Hargrave-Thomas*, 374 F.3d at 391. The Court of Appeals, after reviewing this Court's grant of release or a new trial to Ms. Hargrave-Thomas, clearly ordered this Court to dismiss Ms. Hargrave-Thomas's petition for a writ of habeas corpus. *Id.* Petitioner then moved for relief from judgment, pursuant to Rule 60(b), before this Court entered any order in compliance with the dictate of the Sixth Circuit. A grant of relief by this Court then, to be contained in the order mandated by the Court of Appeals, would by nature deviate from the Sixth Circuit's directive to dismiss Ms. Hargrave-Thomas's petition for a writ of habeas corpus. This Court does not believe such a course of action is authorized.

The Sixth Circuit, in its July 6, 2004 opinion, reversed this Court and remanded the case "for entry of an order dismissing the petition." *Id.* A remand directing a specific, narrow course of

16

action is fairly considered a limited remand. *United States v. O'Dell,* 320 F.3d 674, 680-81 (6th Cir. 2003). When an appellate court issues a limited remand, "[t]he mandate rule 'compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court.' " *Id.* at 679 (quoting *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001)); *see also* 28 U.S.C. § 2106. "A district court is bound to the scope of the remand issued by the court of appeals." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999) (cited in *O'Dell,* 320 F.3d at 679). Not only is the district court limited in the scope of the remand but the "district court's actions on remand should not be inconsistent with either the express terms or the spirit of the mandate." *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992); *see Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306 (1948) (a district court may not deviate from the mandate of an appellate court); *O'Dell*, 320 F.3d at 679-80. A failure to follow the Sixth Circuit's order "scrupulously and fully" would not only subject this Court to further review by the Court of Appeals but would also frustrate the judicial interest in proceeding toward finality. *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d at 69 (citing *United States v. E.I. Du Pont De Nemours & Co.*, 366 U.S. 316, 325 (1961)); *O'Dell*, 320 F.3d at 679. It follows that because the Sixth Circuit remanded the case to this Court with the limited remand "for entry of an order dismissing the petition," *Hargrave-Thomas*, 374 F.3d at 391, any action other than a dismissal of Ms. Hargrave-Thomas's petition at this time would be inconsistent with this Court's authority. Consequently, to the extent that Petitioner's Rule 60(b) motion now asks this Court to grant relief via an order deviating from the Court of Appeals mandate that Ms. Hargrave-Thomas's petition for a writ of habeas corpus be dismissed, this Court is unable to do so.

17

Therefore, after a full consideration of all the possible avenues through which Petitioner may seek relief from judgment at this time, Petitioner's motion for relief of judgment must fail. This Court has no authority to reconsider the judgment of a superior, reviewing court. This Court also cannot grant relief from a judgment that no longer exists. Finally, this Court has bounded authority to act on a limited remand, and where, as here, the Court of Appeals has directed specific action by this Court, any current order must comply with both the terms and spirit of the mandate. As such, this Court finds that any consideration of the merits of a 60(b) motion is premature until after this Court enters a judgment that is consistent with the mandate of the Sixth Circuit Court of Appeals.

This Court also recognizes that Petitioner suggested in oral argument that if this Court could not consider her motion for relief from judgment *before* issuing an order in compliance with the directive of the Court of Appeals to dismiss her petition for a writ of habeas corpus, the Court could consider her motion for relief *concurrent* to the issuance of such an order. Oral Arg. on Supp. Briefing Tr., p. 40 (July 13, 2006). However, the Court finds such an action to be highly imprudent. The Court will not consider a motion for relief from judgment filed before such a judgment has issued. Petitioner cannot be expected to have the foresight to know what claims may arise from a judgment that has not been issued. Furthermore, such a premature consideration may deprive Petitioner of the ability to set forth additional claims that may present themselves between the issuance of this Court's final judgment and the time limits for claims established by Rule 60(b). Simply put, the consideration of Petitioner's premature motion for relief from judgment would be ill-advised for all parties involved.

Petitioner asks this Court to consider two cases as authority that allow this Court to now

18

consider her Rule 60(b) motion.  First, Petitioner urges this Court to consider *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17 (1976), for the proposition that it has the authority to grant 60(b) relief contrary to an appellate court mandate.  *Standard Oil* is readily distinguishable from the instant case, however, and is not persuasive to this Court.  In *Standard Oil*, the district court issued a ruling that was affirmed by the United States Supreme Court.  Subsequent to these decisions, events occurred between the parties which created facts that neither court had considered. Standard Oil Company of California then sought relief from the judgment pursuant to Rule 60(b).  The Supreme Court ruled that its mandate need not be recalled before the district court entertained a Rule 60(b) motion because the changed circumstances created a valid basis for departure from the mandate.  "[T]he appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events.  Hence the district judge is not flouting the mandate by acting on the motion."  *Standard Oil Co. of Cal.*, 429 U.S. at 18 (citations omitted).  Here, unlike the situation in *Standard Oil*, Petitioner does not demonstrate any  "later events" that the Sixth Circuit's mandate did not purport to deal with.  Consequently, *Standard Oil* provides no rationale that would permit this Court to deviate from the mandate of the Sixth Circuit.  Furthermore, *Standard Oil* does not support any claim that this Court may now consider Petitioner's 60(b) claim. Instead, this Court finds that, contrary to Petitioner's application of the case, *Standard Oil* supports the proposition that given the lack of "later events" presenting changed circumstances not considered by the Sixth Circuit, an order deviating from the Court of Appeals decision would be "flouting the mandate."  *Standard Oil Co. of Cal.*, 429 U.S. at 18.

    Next, Petitioner argues that this Court has authority to consider her Rule 60(b) motion

without authorization from the Court of Appeals under *Gonzalez v. Crosby*, __ U.S. __, 125 S. Ct. 2641 (2005). In *Gonzalez*, the Supreme Court held that when a court determines that a 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," the district court need not seek prior authorization from the court of appeals under § 2244. *Gonzalez*, 125 S. Ct. at 2648. Certainly, Petitioner goes a long way in her attempt to argue that her 60(b) motion is one that attacks the procedural nature of the first habeas proceeding and not the substance of this Court's ruling. But while the requirements of *Gonzalez* are *necessary* to consider such a 60(b) motion without prior authorization from the court of appeals, they are not *sufficient*; for Petitioner to be successful in her claim now before the Court, this Court requires the authority not only to be able to consider the Rule 60(b) motion without prior authorization from the court of appeals, but more fundamentally, the authority to consider the motion now, before a judgment of this Court exists. This Court does not believe *Gonzalez* supports Petitioner's argument with respect to the threshold issue of the premature nature of her petition. Certainly, assuming *arguendo* that Petitioner's claims attack some defect in the integrity of the Court's habeas proceedings and not the substance of the decision, after this Court enters a final judgment in compliance with the Sixth Circuit's mandate, *Gonzalez* would appear, in theory, to allow this Court to consider procedural claims that meet the requirements of both Rule 60(b) and *Gonzalez*, without first seeking authorization of the appellate court.

Consequently, for all the aforementioned reasons, this Court finds no authority to consider Petitioner's Rule 60(b) motion at this time. The motion seeking relief from a final order, judgment, or other proceeding is premature because no such judgment has yet been entered. Nor can this

Court enter an order contrary to that dictated by the Court of Appeals.  Therefore, this Court will dismiss Ms. Hargrave-Thomas's Rule 60(b) motion as premature without a consideration of its substantive merits.  The only proper action for the Court at this time is to dismiss Petitioner's Rule 60(b) motion for relief from judgment, in full accordance with the Court of Appeals mandate.  *See Hargrave-Thomas*, 374 F.3d at 391.  Furthermore, because the Rule 60(b) motion is denied, her request for an evidentiary hearing to present further testimony in support of that motion shall be denied as moot.

### III.   Respondent's Motion to Enforce the Mandate, Revoke Bond, Order to Surrender and/or Order for Arrest.

The Court now turns to Respondent's motion.  Respondent, in its May 9, 2005 motion, requests this Court to follow the mandate of the Sixth Circuit; to enter an order dismissing Petitioner's original petition for writ of habeas corpus; to revoke Petitioner's bond; and to order Petitioner to surrender, or, in the alternative, to order her arrest.  The Court, despite its sincere misgivings about the manner in which Petitioner was convicted, believes this to be the only proper course of action at this time.

Until now, this Court has denied Respondent's request to enter an order dismissing Petitioner's original habeas corpus.  Initially, because the mandate had not yet issued, this Court lacked the authority to dismiss Ms. Hargrave-Thomas's original petition for a writ of habeas corpus.  *See* Fed. R. App. P. 41.  That changed on April 25, 2005, however, when the Sixth Circuit issued its mandate.  More recently this Court has declined to enter an order dismissing her habeas petition because Petitioner's Rule 60(b) motion was pending.  *See supra* note 8.  But now that too has

21

changed.  And with those changes, all justification for declining to enter an order dismissing Petitioner's petition for a writ of habeas corpus have evaporated.  Consequently, this Court, consistent with the Sixth Circuit's July 6, 2004 order, shall dismiss Ms. Hargrave-Thomas's petition for a writ of habeas corpus.  *See Hargrave-Thomas*, 374 F.3d at 391.

Additionally, because Ms. Hargrave-Thomas's habeas corpus petition is now dismissed, this Court finds no justification to allow her to remain on bond.  Consequently, her bond shall be revoked and she shall surrender to the facility from which she was released, Scott Correctional Facility, located in Plymouth, Michigan, no later than 2:00 p.m. on September 15, 2006.  Failure to surrender by that time shall result in an immediate order for Petitioner's arrest.

## IV.    Conclusion

All of the Court's foregoing actions are not to say that this Court does not believe Petitioner deserves to be granted a new trial.  Many times, on the record, this Court has made clear that it considers the events surrounding Ms. Hargrave-Thomas's trial a travesty.  On multiple occasions, the Court has expressed its sentiments regarding trial counsel, Mr. Rene Cooper and Mr. Nicholas Vendetelli.  Time has not changed this Court's conviction that they were "manifestly and flagrantly ineffective."  *Hargrave-Thomas*, 236 F. Supp. 2d at 779.  Neither will time change the harm this Court believes has resulted from the "flagrant manifest denial of [Ms. Hargrave-Thomas's] right to a fair trial."  Oral Arg. on Mot. to Enforce Mandate and Revoke Bond Tr., p. 30 (June 22, 2005).  "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free."  *Herring v. New York*, 422 U.S. 853, 862 (1975).  " '[T]ruth,' Lord Eldon said, 'is best

discovered by powerful statements on both sides of the question.' " *United States v. Chronic*, 466 U.S. 648, 655 (1984) (quoting Lord Eldon in Kaufman, *Does the Judge Have a Right to Qualified Counsel?*, 61 A.B.A. J. 569, 569 (1975)).  The fact that Ms. Hargrave-Thomas effectively had no statement on her side of the question at trial raises serious doubts about whether the truth has been discovered in this case.

This Court does not believe blame lies solely with Petitioner's trial counsel, however.  The Court is mindful of counsel errors that have plagued this case at all levels; trial counsel for failure to investigate, appellate counsel for failing to raise the claim of ineffective assistance of trial counsel for failure to investigate, and Petitioner's habeas counsel for failing to raise the claim of ineffective assistance of appellate counsel for failure to raise the aforementioned error.  While it is unexpected that a court reviewing the course of litigation with the benefit of hindsight will turn up no errors, the egregious nature of the original errors combined with the magnitude of the penalty asserted in this case make Petitioner's situation all the more striking.[11]  Yet, this Court is a court of limited

---

[11] This case has not only garnered considerable attention from this Court, but also from other members of the community.  Of particular note are two of those individuals that have taken notice of Petitioner's case.  Governor Jennifer Granholm, a former Assistant United States Attorney well aware of the limitations of this Court to grant lawful redress in this case after this Court granted Petitioner a new trial but was reversed by the Court of Appeals, has nevertheless, personally urged this Court, "to follow [its] initial determination and grant Ms. Hargrave-Thomas a new trial."  Letter from Jennifer M. Granholm, Governor of the State of Michigan, to the Honorable Paul V. Gadola, United States District Judge for the Eastern District of Michigan (July 22, 2005).  This letter was issued after Governor Granholm, having been presented with an opportunity to exercise the gubernatorial power to grant clemency for Petitioner, declined to grant her relief.   *See* David Ashenfelter, *Granholm says no to request for clemency*, Detroit Free Press, July 26, 2005.  *See also* Editorial, *Clemency Request: Facing an injustice, the governor tries to punt*, Detroit Free Press, Aug. 1, 2005.  Additionally, the Honorable Mary Beth Kelly, Chief Judge of Wayne County Circuit Court, the court in which Ms. Hargrave-Thomas was initially tried, has personally urged Governor Granholm to commute Petitioner's sentence, noting that "[u]nfortunate cases such as this bring home

authority, confined by law and the decisions of superior courts.  Where, as here, there is only one course of action within those confines, a court taking alternate action not only harms the litigant before it, but the entire legal system as well.  The Court of Appeals for the Sixth Circuit has exercised its reviewing function of this Court and mandated a specific course of action, the dismissal of Ms. Hargrave-Thomas's petition for a writ of habeas corpus.  That specific directive, combined with the inferior nature of this Court to that of the Court of Appeals, leave the Court with no alternative than to reluctantly dismiss Ms. Hargrave-Thomas's petition for a writ of habeas corpus.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Petitioner's motion for relief from judgment [docket entry 153] is **DENIED WITHOUT PREJUDICE** as **PREMATURE**.

**IT IS FURTHER ORDERED** that Petitioner's motion for an evidentiary hearing [docket entry 153] is **DENIED** as **MOOT.**

**IT IS FURTHER ORDERED** that  Petitioner's motion to remain on bond [docket entry 153] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's petition for a writ of habeas corpus [docket

---

the fact that our legal system is not perfect, as well that the appellate process does not cure each imperfection."  David Ashenfelter, *Judge wants governor to commute woman's sentence*, Detroit Free Press, May 25, 2005, at B1 (referring to Wayne County Circuit Court Chief Judge Mary Beth Kelly).  *See generally*, Sheri Hall, *Prisoner reunited with her family; After 10 years, woman gets new murder trial*, Detroit News, Sept. 20, 2002; Jim Lynch, *Woman's life term reinstated*, Detroit News, July 13, 2004; James Carney, *A Clemency Conundrum in Michigan*, Time Magazine, June 12, 2005, at 16; *Convicted killer's hope rests on clemency request*, Detroit Legal News, May 16, 2005; Editorial, *Call for Justice: Kylleen Hargrave-Thomas deserves a fair trial*, Detroit Free Press, May 17, 2005.

entry 1] is **DISMISSED**, in accordance with the July 6, 2004 opinion of the Court of Appeals for the Sixth Circuit.

      **IT IS FURTHER ORDERED** that Respondent's motion to revoke bond [docket entry 147] is **GRANTED.**

      **IT IS FURTHER ORDERED** that Respondent's motion for an order to surrender  [docket entry 147] is **GRANTED,** and that Petitioner **SURRENDER** to the **ROBERT SCOTT CORRECTIONAL FACILITY**, 47500 Five Mile Road, Plymouth, MI, no later than **2:00 P.M.**, **SEPTEMBER 15, 2006**.

      **SO ORDERED.**

Dated:    August 16, 2006                 s/Paul V. Gadola
                                          HONORABLE PAUL V. GADOLA
                                          UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   August 16, 2006 , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:             Brad H. Beaver; Andrea D. Lyon; Bridget M. McCormack            , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                             Joseph A. Puleo                             .


                      s/Ruth A. Brissaud
                      Ruth A. Brissaud, Case Manager
                      (810) 341-7845

---